Mark MEISENHELDER,
Appellant–Plaintiff,

v.

ZIPP EXPRESS, INC., an Indiana Corporation, Celadon Trucking Services of Indiana, Inc., an Indiana Corporation, Daniel Frieden, Ernie Krebs, Richard Williamson, Jerry Clowser, and Michael E. Mills, Individually and in their capacities as officers and shareholders, and agents of Zipp Express, Inc., jointly and severally, Appellees–Defendants.

No. 49A02–0205–CV–390.

Court of Appeals of Indiana.

May 28, 2003.

Jay Meisenhelder, Roberta L. Ross, Ross & Brunner, Indianapolis, IN, Attorneys for Appellant.

Robert F. Wagner, Stephanie L. Cassman, Lewis & Wagner, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant–Plaintiff, Mark Meisenhelder, challenges the trial court's grant of summary judgment in favor of Appellee–Defendants Zipp Express, Inc., Celadon Trucking Services of Indiana, Inc., Daniel Frieden, Ernie Krebs, Richard Williamson, Jerry Clowser, and Michael E. Mills (collectively "Zipp").

We affirm.

The facts most favorable to the non-moving party reveal that Meisenhelder was employed by Zipp on September 1, 1986, at which time he signed a written employment contract. The provision of the employment contract at issue in this appeal reads, "On September 30, 1987, provided Meisenhelder is an employee on said date, Zipp shall present a stock ownership package to Meisenhelder. Zipp reserves the right to name the percentage and restrictions at that time." Appellant's Appendix at 21. Zipp never presented Meisenhelder with a stock ownership package. After he began to work for Zipp, Meisenhelder's job performance was frequently criticized by his immediate supervisor, Richard Williamson. Meisenhelder believed that if he questioned his superiors at Zipp about the failure to present him with a stock ownership package, his job would be in danger. Nevertheless, in the autumn of 1987, Meisenhelder did broach the issue with Williamson, who told Meisenhelder to take up the issue with Zipp's president and CEO, Jerry Clowser.[1] Meisenhelder failed to do so.

---

1. In the transcript of Meisenhelder's deposition and in Meisenhelder's affidavit, the name

Some months later, after Williamson had told Meisenhelder that he was fired, Meisenhelder stopped by Clowser's office. Meisenhelder told Clowser, "[Williamson] just fired me. I'm going home. The only thing I want to know is where and what do I get for the stock—when or what." Appellant's App. at 63. As related by Meisenhelder during deposition, Clowser's response was "I'll talk to [Williamson], let him calm down. You go home, I'll get ahold of you, just if you do your job, you won't have anything to worry about." *Id.* Meisenhelder continued to work for Zipp but still was not presented with a stock ownership package.

Meisenhelder asked Williamson about the stock package again in 1996 or 1997 and was again told to speak with Clowser. In 1999, shortly before Zipp was sold to Celadon Trucking, Meisenhelder again asked Williamson about the stock ownership package and was yet again told to speak to Clowser. A few days later Meisenhelder spoke to Clowser, who stated that he did not remember that Meisenhelder had an employment contract. Clowser informed Meisenhelder that the officers of Zipp who owned stock had purchased their shares. When Meisenhelder noted that he was never presented with an opportunity to purchase shares, Clowser stated that Meisenhelder did not have enough money to purchase any stock.

On August 9, 2000, Meisenhelder filed suit against Zipp, alleging breach of contract, quantum meruit, promissory estoppel,[2] interference with contract, civil conversion, and intentional infliction of emotional distress.[3] Zipp filed an answer to the complaint on October 25, 2000. On June 14, 2001, Zipp filed a motion for summary judgment. Meisenhelder filed a motion in opposition to summary judgment on July 11, 2001. On November 15, 2001, the trial court held a hearing on the matter, and on February 7, 2002, granted summary judgment in favor of Zipp. Meisenhelder filed a motion to correct error on March 11, 2002, which was deemed denied due to the trial court's failure to act thereon within forty-five days. *See* Ind. Trial Rule 53.3. Meisenhelder filed a notice of appeal on May 15, 2002.

### Summary Judgment

Summary judgment is appropriate only where no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Settles v. Leslie,* 701 N.E.2d 849, 852 (Ind.Ct.App.1998). Genuine issues of material fact exist where facts concerning an issue which would dispose of the litigation are in dispute. *Settles,* 701 N.E.2d at 852. The moving party has the initial burden of demonstrating, prima facie, the absence of genuine issues of material fact. *Id.* If the moving party does so, the burden then falls upon the non-moving party to identify a factual dispute which would preclude summary judgment. *Id.* Upon appeal of a grant of summary judgment, we apply the same standard as the trial court, resolving any factual disputes or conflicting inferences in favor of the non-moving party. *Id.* We consider only

---

of the president of Zipp is spelled "Closser." However, in the filings of both parties, the name is spelled "Clowser." It is the latter spelling, used by the defendants, which we use.

**2.** Count III of the complaint refers to "detrimental reliance on the promise of stock ownership in the contract." Appellant's App. at

13. The trial court and the parties have treated this as claim of promissory estoppel.

**3.** Upon appeal, Meisenhelder makes no argument regarding his claims of quantum meruit, interference with contract, civil conversion, or intentional infliction of emotional distress.

those portions of the record specifically designated to the trial court. *Id.* Upon appeal, the non-moving party bears the burden of persuasion and must specifically point to the disputed material facts and the designated evidence pertaining thereto. *Id.* We will liberally construe the designated evidence in favor of the non-movant, so that he is not improperly denied his day in court. *Id.* Nevertheless, we will not become an advocate for a party, and the trial court's entry of summary judgment will be affirmed if it may be sustained upon any theory or basis found in the evidentiary material designated to the trial court. *Id.*

## I

### Statute of Limitations for Breach of Contract Claim

 Meisenhelder first argues that the trial court erred in concluding that the statute of limitations began to run in 1987 and expired in 1997, thereby barring his cause of action. Indiana Code § 34–11–2–11 (Burns Code Ed. Supp.2002) states:

"An action upon contracts in writing other than those for the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues. However, an action upon contracts in writing other than those for the payment of money entered into before September 1, 1982, not including chattel mortgages, deeds of trust, judgments of courts of record, or for the recovery of the possession of real estate, must be commenced within twenty (20) years after the cause of action accrues."

Here, the employment contract was entered into on September 1, 1986. Thus, any action on the contract must have been commenced within ten years after the cause of action accrued. Neither party disputes this; instead, the parties disagree upon the question of when the current cause of action accrued. The question of when a cause of action accrues is generally one of law for the courts to determine. *Malachowski v. Bank One*, 590 N.E.2d 559, 564 (Ind.1992).

Meisenhelder contends, "In breach of contract actions ... the statute of limitations does not necessarily begin to run at the time the contract is breached. Instead, Indiana follows the discovery rule, which provides that '[a] cause of action accrues, and the statute of limitations begins to run, when the plaintiff *knew or, in the exercise of ordinary diligence, could have discovered* that an injury had been sustained as a result of the tortious act of another.' " Appellant's Brief at 7 (emphasis in original) (quoting *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind.Ct.App.1996), *trans. denied*). Meisenhelder also cites *C & E Corp. v. Ramco Industries, Inc.*, 717 N.E.2d 642, 644 (Ind. Ct.App.1999), for the proposition that a cause of action accrues when a wrongfully inflicted injury causes damage. Meisenhelder concludes that the statute of limitations did not begin to run on the date on which the breach occurred, but instead began to run when he became aware of the fact that the breach had occurred. Indeed, Meisenhelder readily admits that the breach occurred in September 1987, but argues that, under the specific facts of this case, he was unaware that the breach had occurred because he had yet to suffer any injury as a result of the breach.

As noted by Zipp, the cases cited by Meisenhelder involve tort claims, not claims of breach of contract. *See Doe*, 673 N.E.2d at 841 (involving claim of personal injury); *C & E Corp.*, 717 N.E.2d at 643 (involving claim of tortious interference

with contract). Zipp cites *Penn. Co. v. Good*, 56 Ind.App. 562, 564, 103 N.E. 672, 673 (1913), *trans. denied*, wherein the court held that a cause of action for breach of contract accrues at the time the breach occurs, and the statute of limitations begins to run from that date. *See also* 51 Am.Jur.2d, *Limitation of Actions* § 160 (2000) (the statute of limitations begins to run in actions on contracts from the time the right of action accrues, i.e., the time the agreement is breached, rather than the time that actual damages are sustained as a consequence of the breach); *Kemper v. Warren Petroleum Corp., Inc.*, 451 N.E.2d 1115 (Ind.Ct.App.1983) (trial court properly determined that plaintiff's cause of action based upon oral employment contract arose no later than the date when plaintiff attained the age of sixty-five and did not receive his pension as he alleged was promised to him, i.e., the date of breach), *trans. denied.* The question before us is whether the discovery rule is applicable to a cause of action for breach of contract. If it is, Meisenhelder argues that there is a genuine issue of material fact as to when he knew or with the exercise of due diligence could have discovered that the contract had been breached; if it is not applicable, Meisenhelder's claim is time-barred by the statute of limitations.

In *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 87–88 (Ind.1985), our Supreme Court expressly applied the discovery rule to the tort claim before it. However, in doing so, it limited its holding to the "precise factual pattern related by the certified question which is an injury to a plaintiff caused by a disease which may have been contracted as a result of protracted exposure to a foreign substance." *Id.* at 88. In *Burks v. Rushmore*, 534 N.E.2d 1101 (Ind.1989), the Court expanded the appli-

cation of a discovery-type rule to encompass a claim for defamation. The Court noted that, while it had refused to go beyond the scope of the certified question before it in *Barnes*, that case did not offer any rationale suggesting that the discovery rule was inappropriate in other contexts. *Id.* at 1104.

In *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840 (Ind.1992), the Court again addressed the applicability of the discovery rule. In *Wehling*, our Supreme Court noted that the applicable statute of limitations was, as in *Barnes* and *Burks*, Indiana Code § 34-1-2-2 (Burns Code Ed. Repl. 1986).[4] The Court stated that the reasoning inherent in the *Barnes* and *Burks* cases "logically applies to all tort claims," and concluded that "the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained by the tortious act of another." 586 N.E.2d at 842–43.

We note that *Barnes*, *Burks*, and *Wehling*, all involved causes of action based upon tort claims, whereas in the present case the issue before us is the applicability of the discovery rule to a claim of breach of contract. In *Habig v. Bruning*, 613 N.E.2d 61 (Ind.Ct.App.1993), a claim for breach of contract, breach of warranty of habitability, and breach of warranty of workmanship was brought by the plaintiffs. In *Habig*, the defendant contracted with the plaintiffs on November 5, 1983, to build an additional room onto the plaintiffs' home, and the work was completed on December 29, 1983. However, in early 1984, the plaintiffs noticed leakage around the skylight in the addition. In the spring of 1987, the plaintiffs first observed structural damage caused by these leaks. After

---

**4.** The limitations contained in I.C. § 34-1-2-2 have been recodified at I.C. §§ 34-11-2-4, 34-11-2-5, 34-11-2-6, 34-11-2-8, 34-11-2-9, and 34-11-2-4-11.

repeatedly complaining to the defendant contractor, the plaintiffs filed suit on January 10, 1991. The trial court granted summary judgment in favor of the defendant.

Upon appeal, this court held that there was a genuine issue of material fact as to whether the statute of limitations barred the plaintiffs' action. *Id.* at 65. In so holding, the *Habig* court applied the discovery rule. *Id.* However, it is not entirely clear from the text of the *Habig* opinion whether the court considered the claim before it to be a tort or a claim for breach of contract. The *Habig* court stated that the plaintiffs' claim was one for "damage to real property caused by breach of contract and warranty," and that the applicable statute of limitations was Ind.Code § 34–1–2–1.[5] *Id.* at 64. Section 1 set forth the limitations for causes of action for: (1) accounts and contracts not in writing, (2) use, rents, and profits of real property, (3) for injuries to property other than personal property, and (4) relief against frauds. I.C. § 34–1–2–1 (Burns Code Ed. Repl.1986). The *Habig* court relied upon *Barnes, Burks,* and *Wehling* in support of its holding, all three of which involved tort claims governed by I.C. § 34–1–2–2(1). The *Habig* court held that the policy underlying the discovery rule was as applicable to actions for injuries to real property under I.C. § 34–1–2–1(3) as it was for actions for injuries to personal property under I.C. § 34–1–2–2(1). 613 N.E.2d at 64. This would suggest that the *Habig* court treated the cause of action before it as being governed by the statute of limitations for actions for injuries to real property, i.e., a tort claim. Had the *Habig* court stopped there, its holding could be limited

to tort claims for injuries to real property. However, the court continued:

> "*Wehling* expressly held that the discovery rule applies to tort claims, which could be governed by either IC 34–1–2–1 or IC 34–1–2–2, depending on whether the damage involved was done to personal property or 'property other than personal property.' The cause of action in *Wehling* involved personal property and IC 34–1–2–2(1). However, its holding, applicable to all tort claims, would apply to a tort claim involving real property and governed by IC 34–1–2–1. *It would be wholly incongruous to interpret IC 34–1–2–1 as requiring the discovery rule in tort cases but not in other cases covered by the particular statute of limitations.*" 613 N.E.2d at 64 (citation omitted, emphasis supplied).

This last sentence indicates the *Habig* court's intention to apply the discovery rule not only to tort claims covered by I.C. § 34–1–2–1, but all claims covered by I.C. § 34–1–2–1.[6]

If it was incongruous to apply the discovery rule only to tort claims under I.C. § 34–1–2–1, now I.C. § 34–11–2–7, it would be just as incongruous to apply the discovery rule to tort claims formerly covered by I.C. § 34–1–2–2(1), but not the other claims formerly covered by I.C. § 34–1–2–2, which included contracts in writing other than those for the payment of money under section 2(6), now I.C. § 34–11–2–11, the statute of limitations at issue before us today.

Another panel of this court recently held that "the statute of limitations in a breach of contract case can be tolled by the application of the discovery rule." *New Welton*

---

5. This section is currently codified at Ind. Code § 34–11–2–7 (Burns Code Ed. Repl. 1998).

6. This would include accounts and contracts not in writing, use, rents, and profits of real property, and relief against frauds. I.C. § 34–1–2–1.

*Homes v. Eckman,* 786 N.E.2d 1172 (Ind. Ct.App.2003) (citing *Habig,* 613 N.E.2d at 65). We must therefore conclude that the discovery rule is applicable to actions for breach of a written contract under I.C. § 34–11–2–11, and that Meisenhelder's cause of action accrued when he knew, or in the exercise of ordinary diligence, could have discovered, that his employment contract had been breached. The relevant issue before us then is when Meisenhelder knew that the contract had been breached, or when, in the exercise of ordinary diligence, he could have discovered that the contract had been breached.

Meisenhelder claims that he was unaware that the contract had been breached in September, 1987. Indeed, he claims that, as far as he was aware, some of the company's stock was his after the September 30, 1987 date, and that he would be presented with physical shares at a later date. Meisenhelder further argues that he could only have become aware of the fact that he did not have any stock if "he suffered some personal financial crisis that he was unable to avert because he did not have the benefit of the stock he was promised" or if "Zipp's breach had produced some negative effect on [his] employment." Appellant's Br. at 8. Meisenhelder argues that neither of these events happened, and that he was never specifically told that he was not going to receive any company stock until July 1999.

However, the following exchange took place between Meisenhelder and Zipp's counsel during a deposition taken on March 21, 2001:

"Q. On September 30, '87, provided you were in the employ on said date, Zipp shall present a stock ownership package to you. Did they do that on that date?

A. No.

Q. Did they ever do that?

A. *Present it to me, no.*

Q. You knew on September 30th, '87 that they hadn't done that didn't you?

A. *Yes.*" Appellant's App. at 76 (emphasis supplied).

Thus, Meisenhelder admitted in his sworn deposition testimony that he did in fact know that the contract had been breached in 1987. Despite this, on July 11, 2001, Meisenhelder claimed in an affidavit that he first became aware in 1999 that Zipp was not going to honor the contract. It is well settled that an opponent to summary judgment may not create a genuine issue of material fact simply by submitting an affidavit which directly contradicts prior, sworn deposition testimony. *In re Estate of Meyer,* 747 N.E.2d 1159, 1168–69 (Ind.Ct.App.2001), *trans. denied. See also Gaboury v. Ireland Road Grace Brethren, Inc.,* 446 N.E.2d 1310, 1314 (Ind.1983) (contradictory testimony contained in an affidavit of the non-moving party may not be used to defeat a summary judgment motion where the only issue of fact raised by the affidavit is the credibility of the affiant). This rule should be strictly enforced to preserve the intent and purpose of summary judgment proceedings. *GDC Envtl. Servs., Inc., v. Ransbottom Landfill,* 740 N.E.2d 1254, 1261 (Ind.Ct.App.2000). " 'If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " *Id.* (quoting *Gaboury,* 446 N.E.2d at 1314).

We conclude that there is no genuine issue of material fact regarding the critical question before us—when did Meisenhelder know, or in the exercise of ordinary diligence, could have discovered that the contract had been breached. The answer

to this question is in September of 1987. Meisenhelder's cause of action accrued from this date, and his current action, filed in 1999, is barred by the applicable statute of limitations. The trial court did not err in reaching that conclusion.

## II

### Fraudulent Concealment

 Meisenhelder claims that, even if the statute of limitations has run on his claim, he should still be allowed to proceed based upon the doctrine of fraudulent concealment. Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by his own actions, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. *Doe v. Shults–Lewis Child and Family Servs., Inc.*, 718 N.E.2d 738, 744–45 (Ind.1999). When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay. *Id.* at 745. The fraudulent concealment exception does not establish a new date for the commencement of the statute of limitations, but instead creates an equitable exception. *Fager v. Hundt*, 610 N.E.2d 246, 251 (Ind.1993). Under this equitable exception, instead of a full statutory limitations period within which to act, a plaintiff must exercise due diligence in commencing his action after the equitable grounds cease to operate as a valid basis for causing delay. *Id.* Therefore, a plaintiff must institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action. *Southerland v. Hammond*, 693 N.E.2d 74, 78 (Ind.Ct.App.1998).

Meisenhelder's claim of fraudulent concealment rests upon his claims that after September 1987, when Meisenhelder was not presented with a stock ownership package, Clowser told him not to worry about the stock and that he would be "taken care of." Appellant's Br. at 10. However, neither this nor any of the designated evidence indicates that any of the defendants ever concealed from Meisenhelder the fact that the contract had been breached or prevented him from obtaining the knowledge necessary to pursue a claim, i.e. that the contract had been breached. Indeed, Meisenhelder admitted that he knew of the breach in 1987. No other knowledge was required for him to pursue a claim, and the doctrine of fraudulent concealment is not applicable.[7]

## III

### Continuing Wrong

 Meisenhelder claims that the trial court erred in concluding that the doctrine of continuing wrong did not toll the statute of limitations. The continuing wrong doctrine is applicable where an entire course of conduct combines to produce an injury. *LeBrun v. Conner*, 702 N.E.2d 754, 758 (Ind.Ct.App.1998). When conduct is determined to constitute a continuing wrong, the statute of limitations is tolled so that it does not commence running until the wrongful act ceases. *Id.* Here, the wrong Meisenhelder complains of is the breach of his written employment contract. The contract was breached in September 1987 when Zipp failed to present Meisenhelder with the stock ownership package as required. Zipp's subsequent refusals to honor the contract do not constitute a con-

---

7. Meisenhelder also claims that there is a genuine issue of material fact as to whether he filed his claim within a reasonable time following the fraudulent concealment of the defendants. *See Southerland*, 693 N.E.2d at 78. However, as we have determined that the fraudulent concealment doctrine is inapplicable, we need not address this issue.

tinual or a continuous breach. Therefore, we cannot say that the trial court erred in concluding that the continuing wrong doctrine was inapplicable to Meisenhelder's breach of contract claim. *See Smith v. Beasley,* 504 N.E.2d 1028 (Ind.Ct.App. 1987) (trial court did not err in dismissing plaintiff's complaint due to violation of statute of limitations as there was no continuing wrong where the alleged wrong was the failure to give plaintiff a one-time increase in salary, despite the arguably continuing impact upon plaintiff).

## IV

### *Promissory Estoppel*

■■■ Meisenhelder claims that the trial court erred in granting summary judgment on his claim of promissory estoppel. The promissory estoppel doctrine encompasses the following elements: (1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise. *First Nat'l Bank of Logansport v. Logan Mfg. Co., Inc.,* 577 N.E.2d 949, 954 (Ind.1991). A promisor who induces a substantial change of position by the promisee in reliance upon the promise is estopped from denying the enforceability of the promise. *Id.*

■■■ Zipp urges that we consider Meisenhelder's claim of promissory estoppel as being in essence the same as his claim for breach of contract. For purposes of the statute of limitations, the substance of a cause of action is ascertained by an inquiry into the nature of the alleged harm and not

by reference to the theories of recovery advanced in the complaint. *Whitehouse v. Quinn,* 477 N.E.2d 270, 274 (Ind.1985).

Here, the promise which Meisenhelder alleges in his complaint is "the promise of stock ownership under the contract." Appellant's App. at 13. Thus, the very promise upon which Meisenhelder's claim of promissory estoppel is premised is the promise embodied in the written employment contract. His claim is essentially one for the breach of the contractual promise and is also barred by the statute of limitations found in I.C. § 34–11–2–11. The trial court did not err in granting summary judgment as to Meisenhelder's claim of promissory estoppel.

Meisenhelder also claims that, if the trial court's grant of summary judgment is affirmed, it will create an "inequitable situation in which employers can take unfair advantage of employees." Appellant's Br. at 20. Nevertheless, as observed by the court in *Shideler v. Dwyer,* 275 Ind. 270, 286, 417 N.E.2d 281, 291 (1981):

> " '[Statutes of limitations] rest upon sound policy, and tend to the peace and welfare of society, and they are to be deemed just as essential to the general welfare and wholesome administration of justice as statutes upon any other subject.' * * * And while an injustice may be done in some instances, it is better for the sake of the peace and welfare of the State, that the rule should prevail ....' " (quoting *Craven v. Craven,* 181 Ind. 553, 559, 103 N.E. 333, 335 (1913)).[8]

In summary, the trial court did not err in granting summary judgment in favor of Zipp.

---

**8.** The conduct of Zipp through its supervisors and officers is less than salutary and does not appear to constitute a course of fair dealing with Meisenhelder. In the context of the case before us and in light of its facts, however, there is no basis presented by Meisenhelder for reversal of the summary judgment.

The judgment of the trial court is affirmed.

SHARPNACK, J., and KIRSCH, J., concur.