**Thomas PERRYMAN, Individually and d/b/a Tom's Nora Automotive, Appellant,**

v.

**MOTORIST MUTUAL INSURANCE COMPANY, Appellee.**

No. 49A02–0511–CV–1060.

Court of Appeals of Indiana.

April 28, 2006.

Donn H. Wray, Glenn D. Bowman, Steward & Irwin, P.C., Indianapolis, for Appellant.

Julia Blackwell Gelinas, Carrie G. Doehrmann, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Thomas Perryman, individually and d/b/a Tom's Nora Automotive (Perryman), appeals the trial court's grant of summary judgment in favor of Appellee–Defendant, Motorist Mutual Insurance Company (Motorist), with regard to Perryman's breach of contract claim.

We affirm.

### ISSUES

Perryman raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether the trial court properly found that Perryman's failure to discover a decision of the Indiana supreme court which affected the coverage available under his policy did not toll the applicable ten-year statute of limitations; and

(2) Whether the trial court properly found that Motorist was not equitably estopped from asserting the ten-year statute of limitations.

### FACTS AND PROCEDURAL HISTORY

From December 1985 until May 1994, Perryman owned an automobile service station located at 1505 East 86th Street, Indianapolis, Indiana. On May 19, 1994, he sold the property to Westfield Invest-

ment, LLC. In March of 1994, two months prior to the sale, six underground storage tanks (UST) were removed from the property. These USTs were used to store gasoline, waste oil, heating oil, and other petroleum products. After the removal, an investigation revealed that a plume of contamination had migrated off-site and into the groundwater. An investigating environmental consultant determined that the contamination consisted of gasoline, waste oil, heating oil, and other petroleum products and that the contamination resulted from leakage associated with the USTs. Remediation of the on-site and off-site contamination resulted in a cost of $159,087.30. Perryman paid these costs from the proceeds of the sale of the property and was reimbursed $62,906.95 by the Indiana Excess Liability Trust Fund.

Motorist provided primary property and casualty insurance to Perryman's property from June 1989 through June 1993, under Policy Numbers 33–13349020 and 33–133490E. On July 2, 1993, Motorist issued a renewal of the insurance policy 33–13349E for a period from June 30, 1993 to June 30, 1994 (the Garage Policy). This policy included the following provisions:

GARAGE OPERATIONS—OTHER THAN COVERED AUTOS

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos" . . .

\* \* \*

B. EXCLUSIONS

This insurance does not apply to any of the following:

\* \* \*

8. POLLUTION EXCLUSION APPLICABLE TO GARAGE OPERATIONS—OTHER THAN COVERED AUTOS.

"Bodily injury," "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" . . .

(Appellant's App. pp. 52, 54).

In March of 1994, Perryman contacted Marlene Keith–Welfeld (Keith–Welfeld) of the Keith Insurance Agency, an agent for Motorist, to file an insurance claim for the remediation and investigation costs associated with the removal of the USTs. Keith–Welfeld advised Perryman that the coverage policy had a pollution exclusion and that his claim would be rejected.

Thereafter, sometime during the first quarter of 2004, Jacob Smith (Smith), who had been the investigating environmental consultant in March of 1994, contacted Perryman. Smith advised Perryman that because of a change in Indiana law, his 1994 remediation claim might be covered under the Garage Policy. Perryman retained counsel and placed Motorist on notice of the claim.

On December 3, 2004, Perryman filed his Complaint against Motorist, requesting a Declaratory Judgment and Damages. On May 13, 2005, Motorist filed its Motion for Summary Judgment, including Designated Evidence and Brief in Support thereof. On July 8, 2005, Perryman filed his Cross–Motion for Summary Judgment, Designated Evidence, and Memorandum in Support thereof and in Opposition to Motion for Summary Judgment. On October 6, 2005 the trial court issued its Order, denying Perryman's Cross–Motion for Summary Judgment and granting Motorist's Motion for Summary Judgment.

Perryman now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 783 (Ind.Ct. App.2002), *trans. denied.* Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *See Ayres v. Indian Heights Volunteer Fire Dep.'t, Inc.,* 493 N.E.2d 1229, 1234 (Ind.1986).

■ Insurance contracts are subject to the same rules of construction as are other contracts. *Jackson v. Jones,* 804 N.E.2d 155, 158 (Ind.Ct.App.2004). Generally, the construction of a written contract is a question of law for the trial court for which summary judgment is particularly appropriate. *Mid State Bank v. 84 Lumber Co.,* 629 N.E.2d 909, 914 (Ind.Ct.App.1994). However, if the terms of a written contract are ambiguous, it is the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract. *Id.* Consequently, when summary judgment is granted based upon the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that the contract ambiguity, if one exists, can be resolved without the aid of a factual determination. *Id.*

### II. *Discovery Rule*

Perryman now contends that the trial court erred in concluding that the statute of limitations began to run in March of 1994, and expired in March of 2004, thereby barring his cause of action against Motorist which was filed on December 3, 2004. Indiana Code section 34–11–2–11 encompasses the statute of limitations applicable to an action based upon an insurance contract, and provides that:

> An action upon contracts in writing other than those of the payment of money, and including all mortgages other than chattel mortgages, deeds of trust, judgments of courts of record, and for the recovery of the possession of real estate, must be commenced within ten (10) years after the cause of action accrues...

Neither party disputes the application of this statute; instead the parties disagree on when the current cause of action accrued. The question of when a cause of action accrues is generally one of law for the courts to determine. *Meisenhelder v. Zipp Exp., Inc.* 788 N.E.2d 924, 927 (Ind. Ct.App.2003).

■ Here, both parties advance the application of the discovery rule in a breach of contract claim and, in support of their argument, rely on our recent decision in *Meisenhelder.* The discovery rule provides that a cause of action accrues when a party knows or in the exercise of ordinary diligence could discover, that the contract has been breached or that an injury had been sustained as a result of the tortious

act of another. *Strauser v. Westfield Ins. Co.,* 827 N.E.2d 1181, 1185 (Ind.Ct.App. 2005). Although the application of the discovery rule originally found its existence in certain tort cases, it was later, under the guidance of *Habig v. Bruning,* 613 N.E.2d 61, 64 (Ind.Ct.App.1993) *trans. denied,* expanded to all tort cases and, in turn, applied to actions for breach of contract under I.C. § 34–11–2–11 by *Meisenhelder,* 788 N.E.2d at 930.[1] The rationale underlying the rule suggests that it is "inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists." *Habig,* 613 N.E.2d at 64 (quoting *Barnes v. A.H. Robins Co., Inc.,* 476 N.E.2d 84, 86 (Ind.1985)).

■ In the case at bar, the parties do not appear to dispute the fact that Perryman became aware of his injury in March of 1994. In his designated evidence, he readily admits that in March of 1994 he contacted Keith–Welfeld to file a claim for the contamination resulting from the USTs. He added that during this telephone conversation, he attempted to file a claim for damages under the Garage Policy . but was informed that the pollution exclusion provision of the policy precluded recovery. Accordingly, we conclude that Perryman was aware of the sustained injury by March of 1994.

Referencing the discovery rule, Perryman now maintains that the cause of action did not accrue when he became aware of the injury in March of 1994, but instead commenced in 2004 when he became aware of our supreme court's decision in *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945 (Ind.1996), *reh'g denied,* adopting, as an issue of first impression, the rule that an absolute pollution exclusion in an insurance policy, similar to the one in Perryman's Garage Policy, is ambiguous and unenforceable. Thus, in essence, Perryman is really claiming that he was unaware, not of his injury and when it originated, but of the purported accrual of his injury's legal ramifications. In this regard, he is requesting an expansion of the discovery rule to, not only awareness of a sustained injury, but also knowledge of his legal causes of action.

In *Kiger,* our supreme court addressed the question of whether an insurance policy's absolute pollution exclusion precluded coverage for a leaking underground storage tank. *Id.* at 949. Noting that the policy included an explicit pollution exclusion clause that excluded coverage for damages arising from "pollutants," the *Kiger* court was particularly troubled by an interpretation that would exclude coverage for a large segment of Kiger's gas station's business operations. *Id.* After expressing concern, the supreme court strictly con-

---

1. While we acknowledge our supreme court's recent decision in *New Welton Homes v. Eckman,* 830 N.E.2d 32 (Ind.2005), we find it readily distinguishable in the instant case. In *New Welton Homes,* the Eckmans argued that a discovery rule should apply to a breach of contract action, where the contract at issue included a limitations period shorter than the statutory period of limitations. *Id.* at 34. Specifically, the contract provided that claims for breach of contract must be brought within one year of the breach. *Id.* Examining the general nature of contracts, our supreme court noted that Indiana courts have regularly held that unless a contractual provision contravenes a statute or public policy, actions on a policy that are brought after the expiration of the limitation period provision will be barred. *Id.* Because both parties agreed to the unambiguous provision shortening the statutory period of limitations, the supreme court held that the contractual limitation must be enforced. *Id.* at 35. In the case before us, however, we find no such provision limiting the applicable statute of limitations' term included in the insurance contract between Perryman and Motorist.

strued the language against the insurer by stating that if a garage policy is intended to exclude coverage for damage caused by the leakage of gasoline, the language of the contract must be explicit. *Id.* Perryman now asserts that the *Kiger* decision marked a "significant change in the law of contract interpretation," reversing the common knowledge at the time of absolute pollution exclusion provisions. (Appellant's Br. p. 11). Discovering this change in the law in 2004, Perryman now claims that he "acted diligently and within ten years of the *Kiger* decision, the earliest date he could have discovered the change in law." (Appellant's Br. p. 14)

█ While we applaud Perryman's novel argument, we are not persuaded. The general purpose of a statute of limitation is to encourage the prompt presentation of claims. *Havens v. Ritchey*, 582 N.E.2d 792, 794 (Ind.1991). Statutes of limitation find their justification in necessity and convenience rather than in logic. *Id.* They represent expedients, rather than principles. *Id.* They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Id.* The discovery rule presents a limited exception to the requirement that a party must file suit within the statutory period.

█ While our research did not reveal any Indiana cases, a review of foreign case law supports our conclusion that the application of the discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred. *See Healy v. Owens—Illinois, Inc.* 359 Ill.App.3d 186, 295 Ill.Dec. 700, 833 N.E.2d 906, 910 (2005); *Clare v. Saberhagen Holdings, Inc.*, 129 Wash.App. 599, 123 P.3d 465, 468 (2005); *McIntosh v. Blanton*, 164 S.W.3d 584, 586 (Tenn.Ct.App.2005). In other words, the discovery rule only postpones the statute of limitations by belated discovery of key facts and not by delayed discovery of legal theories. *Anderson v. Dean Witter Reynolds, Inc.*, 920 P.2d 575, 579 (Utah Ct.App.1996), *reh'g denied, cert. denied; Andres v. McNeil Co., Inc.*, 270 Neb. 733, 707 N.W.2d 777, 786 (2005); *Troum v. Newark Beth Israel Medical Center*, 338 N.J.Super. 1, 15, 768 A.2d 177 (App.2001), *cert. denied.*

██ Viewing the discovery rule in this context, we conclude that

[t]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the acts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full blown theory of recovery developed.

*Mitchell v. Holler*, 311 S.C. 406, 429 S.E.2d 793, 795 (1993). Stated more succinctly, the law does not require a smoking gun in order for the statute of limitations to commence. *See Giraud v. Quincy Farm and Chemical*, 102 Wash.App. 443, 6 P.3d 104, 109 (2000).

Even though Perryman relies on *Wal–Mart Stores v. AIG Life Insurance Co.*, 860 A.2d 312 (Del.2004) as support for his argument, we find the case to be inapposite. Wal–Mart's claims arose out of its purchase of corporate-owned life insurance policies (COLI policies). *Id.* at 315. COLI policies insured the lives of Wal–Mart's employees and were purchased as

part of a plan whereby the insurers provided Wal–Mart loans that were used to pay the premiums of the policies. *Id.* Wal–Mart then deducted the interest payments on the loans from its income for tax purposes. *Id.* In 1996, as part of the Health Insurance Portability and Accountability Act (HIPAA), Congress prospectively disallowed interest deductions for loans used to fund COLI policies. *Id.*

While HIPAA eliminated deductibility of interest payments prospectively, the Internal Revenue Service (IRS) brought several lawsuits in which it sought to retrospectively disallow COLI related tax deductions. *Id.* at 316. Subsequently, the United States Tax Court disallowed the retrospective tax deductions. *Id.* As a result, Wall–Mart brought a claims against the insurers. *Id.* at 317. While the trial court dismissed Wal–Mart's claims which had occurred between 1993 and 1995 under Delaware's three years statute of limitations, the Delaware supreme court held that Wal–Mart's claims were inherently unknowable before the running of the statute of limitations because no court had retrospectively disallowed pre–1996 tax deductions until the United States Tax Court so held. *Id.* at 319. However, unlike Wal–Mart, where no injury existed prior to the United States Tax Court's decision, in the instant case, Perryman's injury existed prior to our supreme court's decision in *Kiger.*

■ In light of the evidence before us, we favor finality in the presentation of claims. Mindful of the general purpose of a statute of limitations and in line with the case law existing in our sister states, we hold that the discovery of an injury, not the development of new case law, commences the running of the statute of limitations. Accordingly, here, Perryman admitted to having discovered and being aware of his injury in March of 1994.

Therefore, pursuant to I.C. § 34–11–2–11, his cause of action should have been brought within ten years of that date. Instead, Perryman did not file his claim until December 3, 2004. Thus, we agree with the trial court that Perryman's claim is time barred.

### III. *Equitable Estoppel*

■ Next, Perryman contends that the trial court erred by deciding that the doctrine of equitable estoppel did not toll the statute of limitations. Specifically, Perryman asserts that Motorist cannot rely on the statute of limitations defense because it fraudulently concealed the change in the law from him. Perryman maintains that "[b]ecause Motorist based its denial solely upon the enforceability of the absolute pollution exclusion, when the *Kiger* decision was published, Motorist knew, or should have known, that Perryman had asserted a valid claim in 1994, and that Motorist no longer had a rational, principled basis for its denial." (Appellant's Br. p. 17).

■ Fraudulent concealment is an equitable doctrine which operates to prevent a defendant from asserting the statute of limitations as a bar to a claim where the defendant, by deception or a violation of a duty, prevents the plaintiff from obtaining the knowledge necessary to pursue a claim. *Meisenhelder,* 788 N.E.2d at 931; *Burns v. Hatchett,* 786 N.E.2d 1178, 1184 (Ind.Ct.App.2003), *trans. denied.* When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay. *Meisenhelder,* 788 N.E.2d at 931. The fraudulent concealment exception does not establish a new date for the commencement of the statute of limitations, but instead creates an equitable exception. *Id.* Under this equitable exception, instead of a full statutory limitations period within which to act, a plaintiff must exercise due

diligence in commencing his action after the equitable ground ceases to operate as a valid basis for causing delay. *Id.* Therefore, a plaintiff must institute an action within a reasonable time after he discovers information which would lead to discovery of the cause of action. *Id.*

 Here, Perryman's claim was denied by Keith–Welfeld in 1994 based on the then prevalent pre-*Kiger* case law. Accordingly, at the time Motorist denied the claim, it did so in good faith. *See Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993), *reh'g denied* (holding that one element of an insurer's obligation of good faith and fair dealing with respect to the discharge of his contractual obligation includes the obligation to refrain from making an unfounded refusal to pay policy proceeds).[2] Nevertheless, Perryman now encourages this court to find that Motorist violated its duty by failing to advise Perryman of our supreme court's decision in *Kiger* which signaled a change in the law. In this regard, Perryman maintains that Motorist had a duty to revisit and investigate Perryman's claim again two years after it was first denied and determine that, based on *Kiger,* coverage existed under the Garage Policy.

We decline to impose such duty. Our supreme court's published decision in *Kiger* was a matter of public record, equally available and accessible to Perryman. By now attempting to shift responsibility of his duty to be aware of the law, Perryman would have us not only create a new burden on insurance companies to keep abreast of developments in claims that have been rejected already but which are still viable within the statute of limitations' term, but also reward plaintiffs who fail to diligently research Indiana law within the statute of limitations term in order to timely bring a claim. This we will not do. Accordingly, we conclude that Perryman's fraud claim fails.

## CONCLUSION

Based on the foregoing, we find that the trial court properly granted summary judgment as a matter of law.

Affirmed.

VAIDIK, J., and DARDEN, J., concur.

---

**2.** Perryman also appears to claim that because Motorist failed to investigate his claim in March of 1994, the insurance company was not on notice that the claim might be covered and accordingly, its failure to investigate amounted to fraudulent concealment. However, we find it ironic that Perryman argues that in March of 1994 he could not have discovered the legal theory later adopted in *Kiger* because of "the wall of authority contrary to the position" followed by *Kiger,* while now Perryman asserts that Motorist should have investigated the policy's language and somehow punctured this wall of authority. (Appellants Br. p.10 n. 1)