Patricia SETTLES, William Freeland, Mark Freeland, and David Freeland, Appellants–Plaintiffs,

v.

Ted Z. LESLIE, John L. Rainey, Wayne L. Seagren, Patricia G. Rainey, Joyce Seagren and Mi–Tech Metals, Inc., An Indiana Corporation Appellees–Defendants.

No. 49A04–9711–CV–468

Court of Appeals of Indiana.

Nov. 6, 1998.

Edward E. Brown, Edward Brown & Associates Indianapolis, for Appellants.

John M. Stuckey, Stuart & Branigin, Lafayette, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellants Patricia Settles, William Freeland, Mark Freeland and David Freeland (collectively Freeland Plaintiffs) appeal the trial court's order granting summary judgment in favor of the Appellees, Ted Z. Leslie, John L. Rainey, Wayne L. Seagren, Patricia G. Rainey, Joyce Seagren (collectively Majority Shareholders) and Mi–Tech Metals, Incorporated (Mi–Tech).

The Freeland Plaintiffs present one issue on appeal, which we rephrase as follows: whether Indiana's Dissenters' Rights Statute[1] provides the exclusive remedy for minority shareholders of a closely held corporation claiming breach of fiduciary duty by the corporation's majority shareholders, who allegedly missappropriated corporate funds by (1) overcompensating themselves, (2) failing to pay dividends, and (3) receiving excessive compensation for employment contracts and non-competition agreements in connection with a corporate merger.

We affirm.

Mi–Tech was incorporated in 1978. The corporation's original shareholders consisted of Ted Leslie, John Rainey, Wayne Seagren and Thomas Dugger. Ted Leslie initially owned twenty-seven shares of Mi–Tech stock, while the others each owned twenty-four shares. Mi–Tech engaged in the making and selling of high-density metal products and electrical contacts produced from powdered metals. In 1979, Mi–Tech hired William "Ed" Freeland (Ed Freeland), who served as the corporation's manufacturing manager. Shortly thereafter, Ed Freeland acquired four shares of Mi–Tech's common stock. At the time he was hired, Ed Freeland was forty-one years old; the remaining shareholders were in their fifties and sixties. Thomas Dugger retired in 1982. The following year, Ed Freeland was selected to replace Thomas Dugger on Mi–Tech's board of directors. Ed Freeland served on the board of directors until his death in April of 1989. In October of 1983, the board resolved to have its accounting firm develop an incentive bonus plan for corporate officers; the plan was not intended to compensate shareholders.

In January of 1984, Ed Freeland and Tom Dugger executed a stock purchase agreement, in which Ed Freeland agreed to buy Tom Dugger's twenty-four shares of Mi–Tech stock for $19,999.92 ($833.33 per share). The agreeement called for Ed Freeland to pay $2000.00 up front, with the balance due in ninety equal monthly installments of $304.25. The agreement further provided that Tom Dugger, the "Seller," would "retain all such shares ... until they are fully paid for, and Seller shall retain full voting rights attributable to said shares of stock.... Any dividends earned or received shall be the sole property of the Seller until the shares are actually transferred and issued" to Ed Freeland. Record at 245.

Ed Freeland was murdered in April of 1989. At the time of his death, Ed Freeland had not completed his monthly installment obligation under the stock purchase agreement. The Freeland Plaintiffs became tenants in common of Ed Freeland's interests in twenty-eight shares of Mi–Tech stock, obtaining full ownership rights in the shares upon paying the entire purchase price to Thomas Dugger sometime in 1989.

In September of 1989, Mi–Tech's board of directors met to review the corporation's position as a result of Ed Freeland's death. The board concluded, "that Ed Freeland's tragic death caused Mi–Tech to be extremely vulnerable as related to metallurgy and age of the owner-managers." Record at 361. Therefore, the board decided to investigate selling the business. Between September of 1989 and February of 1992, the board of directors negotiated with two corporations for the purchase of Mi–Tech, but no sale was ever consummated. The Freeland Plaintiffs did not object to these proposed transactions.

In the Fall of 1991, the Internal Revenue Service (IRS) contacted Mi–Tech regarding proposed adjustments to Mi–Tech's tax returns for fiscal years 1988, 1989 and 1990. Among other allegations, the IRS argued that Mi–Tech's incentive bonus plan resulted in excessive compensation for Mi–Tech's of-

---

1. I.C. 23–1–44–1 to –20 (Burns Code Ed. Repl.   1995).

ficers, including Ed Freeland. Mi–Tech contested each allegation. Ultimately, the dispute was resolved through a negotiated settlement. In the settlement, Mi–Tech acknowledged income tax deficiencies totalling $71,802.00 from the three years in dispute. The IRS conducted subsequent audits of Mi–Tech's returns in 1991 and 1992, but the agency proposed no further adjustments. During this period, Mi–Tech continued to compensate its officers pursuant to the incentive bonus plan.

In the Summer of 1994, Mi–Tech successfully negotiated the merger of Mi–Tech with another company, Birco, Incorporated (Birco). Under the Plan of Merger, Mi–Tech was the surviving corporation. The plan called for Mi–Tech's outstanding common stock to be converted into cash and Birco's common stock, in turn, to be converted into new shares of Mi–Tech common stock. On September 2, 1994, counsel for the Freeland Plaintiffs received notification of a Special Meeting of Shareholders, scheduled for September 12, 1994, and called for the purpose of considering the proposed merger. On September 9, 1994, the Freeland Plaintiffs filed a Complaint for Accounting, which also requested a temporary restraining order to prevent Mi–Tech's directors from voting on the planned merger. The temporary restraining order was denied on September 12, 1994, and the special meeting proceeded. At this shareholder's meeting, Plaintiff Patricia Settles, along with counsel for the Freeland Plaintiffs, conveyed a written Notice of Dissent to the shareholders regarding the proposed merger. The dissent stated, in part:

"Notice is hereby given that [the Freeland Plaintiffs] ... express and state their dissent with the proposed Plan of Merger of Mi–Tech Metals, Inc. with Birco, Inc.

1. That [the Freeland Plaintiffs] are shareholders entitled to vote on the proposed merger.

2. That it is the intent of [the Freeland Plaintiffs] to demand payment for their shareholders shares if the proposed action is effectuated.

3. That [the Freeland Plaintiffs] further intend to retain all other rights of a shareholder, and further they are willing to deposit the shareholders share certificate[s] as the corporation may require.

4. The dissenters further hereby notify the corporation that the dissenters' own estimate of the fair value of the dissenters' shares is the sum of $19,018.40 per share." Record at 241.

The merger proposal was adopted. Subsequently, on or about September 21, 1994, Mi–Tech mailed to each of the Freeland Plaintiffs a Notice of Dissenters' Rights. The Notice provided that, if the Freeland Plaintiffs elected to demand payment pursuant to Indiana's Dissenters' Rights (IDR) statute, Chapter 44 of the Indiana Business Corporation Law,[2] they should forward a payment demand on the form provided. Further, the Notice indicated that any demand must be recieved not later than sixty days from the date on the Notice and that the dissenters' Mi–Tech share certificates must be deposited with Allan Bir, President of Mi–Tech Metals, Inc. Mi–Tech offered to exchange the Freeland Plaintiffs' shares for $14,000 per share. The Freeland Plaintiffs read the Notice of Dissenters' Rights and consulted their counsel regarding the document. However, they failed to timely submit a demand payment or deposit their share certificates pursuant to Mi–Tech's instructions. The Freeland Plaintiffs also ignored follow-up correspondence by Mi–Tech advising them to deposit their share certificates.

Responding to the Complaint against them, the Majority Shareholders and Mi–Tech claimed in their Answer, filed September 20, 1994, that the Freeland Plaintiffs' exclusive remedy was the IDR statute. On July 17, 1995, the trial court dismissed two counts of the Complaint. The Freeland Plaintiffs filed an Amended Complaint on April 12, 1996, asserting claims both individually[3] and derivatively that the Majority

---

2. I.C. 23–1–17–1 *et seq*. (Burns Code Ed. Repl. 1995).

3. Indiana follows the well-established general rule that shareholders of a corporation may not

maintain actions in their own names to redress injuries to the corporation, even if the value of their stock is impaired due to the injuries. *Knauf Fiber Glass GMBh v. Stein* (1993) Ind., 622 N.E.2d 163, 165 (noting "[t]his has been the

Shareholders fraudulently converted corporate funds and breached their fiduciary duty to both the corporation and to the Freeland Plaintiffs. On May 1, 1996, the Majority Shareholders and Mi–Tech filed an Answer to Amended Complaint. Thereafter, on October 15, 1996, the Majority Shareholders and Mi–Tech filed a Motion for Summary Judgment, together with a memorandum supporting the motion. After the Freeland Plaintiffs requested a rescheduling, a hearing on the summary judgment motion was eventually set for and argued before the trial court on May 5, 1997. On that date, counsel for the Freeland Plaintiffs filed an Affidavit, signed by each Plaintiff, and an Affidavit of Expert Witness, demonstrating alleged material issues of fact.[4] On July 11, 1997, the trial court, without explanation or elaboration, granted the summary judgment motion as to all of Plaintiffs' claims, including any claims of alleged unpaid dividends.

Summary judgment is appropriate only where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *DRW Builders, Inc. v. Richardson* (1997) Ind.App., 679 N.E.2d 902, 905, *reh'g denied.* Genuine issues of material fact exist where facts concerning an issue which would dispose of the litigation are in dispute. *General Motors Corp. v. Northrop Corp.* (1997) Ind. App., 685 N.E.2d 127, 132, *trans. denied.* The moving party first has the burden to demonstrate the absence of a material fact. *Abbott v. Bates* (1996) Ind.App., 670 N.E.2d 916, 921, *reh'g denied.* Once the movant has established, prima facie, that no genuine issues of material fact exist, the burden then falls upon the non-movant to identify a factual dispute which would preclude summary judgment. *Id.*

In reviewing the grant of summary judgment, we apply the same standard as the trial court, resolving any factual disputes or conflicting inferences in favor of the non-movant. *Abbott, supra,* 670 N.E.2d at 921; *DRW Builders, supra,* 679 N.E.2d at 905–06. Further, we may only consider those portions of the record specifically designated to the trial court. *American Management, Inc. v. MIF Realty, L.P.* (1996) Ind.App., 666 N.E.2d 424, 429. Upon appeal, the non-movant maintains the burden of persuasion. *Abbott, supra* at 924. She must specifically point to the disputed material facts and the designated evidence pertaining thereto. Ind. Trial Rules 56(C) & (E); *Abbott, supra* at 921. We will liberally construe the designated evidence in favor of the non-movant, so that she is not improperly denied her day in court. *Abbott, supra* at 924. However, we will not become an advocate for a party. *Id.* The entry of summary judgment will be affirmed if it may be sustained on any theory or basis found in the evidentiary material designated to the trial court. *American Management, supra* at 430.

The Freeland Plaintiffs contend that the IDR statute does not govern their individual and derivative claims alleging breach of fiduciary duty and fraud. The IDR statute provides in part the following:

"A shareholder is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares in the event of . . .

rule in Indiana for some time."), *reh'g denied.* However, exceptions to the rule exist. One exception applies to closely-held corporations. The Indiana Supreme Court, in *Barth v. Barth* (1995) Ind., 659 N.E.2d 559, *appeal after remand* (1998) Ind.App., 693 N.E.2d 954, adopted a proposal by the American Law Institute permitting a trial court in its discretion to allow minority shareholders in a closely held corporation to bring individual, not derivative, actions. However, the court must find that to do so will not: "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." *Id.* at 562 (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)). In granting summary judg-

ment, the trial court in the instant case did not specifically address any of these three factors. For the purposes of this appeal only, we assume, without holding, that the Freeland Plaintiffs may bring an individual action under the *Barth* exception.

4. The Appellee-defendants assert that these affidavits are untimely, lack a proper foundation and were not properly designated to the trial court pursuant to Ind. Trial Rule 56(C); therefore, they contend that the affidavits should not be considered by this court on appeal. Because we decide the instant case on other grounds, we decline to discuss the admissibility of these affidavits.

[c]onsummation of a plan of merger to which the corporation is a party.... A shareholder ... [w]ho is entitled to dissent and obtain payment for the shareholder's shares ... may not challenge the corporate action creating ... the shareholder's entitlement." I.C. 23–1–44–8(a) & (c) (Burns Code Ed. Repl.1995).

This provision provides the exclusive remedy for minority shareholders challenging a proposed merger. *Fleming v. International Pizza Supply Corp.* (1997) Ind., 676 N.E.2d 1051, 1056.

In the instant case, Mi–Tech merged with Birco. Pursuant to the IDR statute, consummation of this merger triggered the Freeland Plaintiffs' rights to claim a "fair value" [5] for their outstanding shares. The Freeland Plaintiffs properly dissented from the merger. Prior to the vote effectuating the merger, the Freeland Plaintiffs issued to Mi–Tech a Notice of Dissent.[6] Mi–Tech thereafter sent each dissenter a Notice of Dissenters' Rights,[7] informing the Freeland Plaintiffs where to deposit their certificated shares and providing them with a demand payment form. Because the Freeland Plaintiffs failed to deposit their shares or demand payment as instructed in the Notice of Dissenters' Rights, they are "considered ... to have voted ... [their] shares in favor of the proposed corporate action." I.C. 23–1–44–13(c) (Burns Code Ed. Repl.1995). Thus, the Freeland Plaintiffs thus were not entitled to payment for their shares.[8] The Freeland Plaintiffs contend that the IDR statute does not apply, because they declined to assert their dissenters' rights. Instead, they opted to pursue individual fraud and breach of fiduciary duty claims against the majority shareholders. An examination of the Freeland Plaintiffs' Amended Complaint, however, suggests otherwise. The Amended Complaint states:

"5. That the Defendants ... through the use of their office, diverted certain funds and assets of the corporation to their personal use, and [the Freeland Plaintiffs] have been frozen out of a portion of the corporate assets *directly affecting the value of the shares* of the [Freeland Plaintiffs].

6. That certain income of Mi–Tech has been misapplied and is tainted, and such mismanagment and misappropriation amounts to self dealing by the majority shareholders with the end result that all shareholders with the exception of [the Freeland Plaintiffs] obtained, directly or indirectly, unreasonable compensation.

7. That such unreasonable compensation is unjust, oppressive and fraudulent.

8. That the Defendants[,] ... as part of a merger of Mi–Tech with Birco, Inc., an Indiana Corporation, allowed and provided for themselves unreasonable and excessive benefits in the form of employment contracts and agreements of noncompetition, the size and magnitude of which *severely impacted and affected the price per share of MiTech stock,* thus obtained for themselves undue advantage and benefit to the direct detriment of [the Freeland Plaintiffs].

9. That the value of the aforesaid employment and noncompetition contracts are in reality *part of the sale price of the stock of Mi–Tech* and should be shared equally

---

**5.** The statute defines "fair value" as "the value of the shares immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of the corporate action unless exclusion would be inequitable." I.C. 23–1–44–3 (Burns Code Ed. Repl.1995).

**6.** I.C. 23–1–44–11(a)(1) & (2) (Burns Code Ed. Repl.1995) ("[A] shareholder who wishes to assert dissenters' rights ... [m]ust deliver to the corporation before the vote is taken written notice of the shareholder's intent to demand payment for the shareholder's shares if the proposed action is effectuated ... [and] not vote ... in favor of the proposed action.").

**7.** I.C. 23–1–44–12 (Burns Code Ed. Repl.1995) ("the corporation shall deliver a written dissenters' notice to all shareholders who [have properly dissented]").

**8.** *See* I.C. 23–1–44–11(b) (Burns Code Ed. Repl. 1995) ("A shareholder who [voted for the merger] ... is not entitled to payment for the shareholder's shares."). Although not entitled to payment under the IDR statute, the Freeland Plaintiffs were entitled to payment for their minority shares under the terms of Mi–Tech's merger agreement with Birco.

among all shareholders, including [the Freeland Plaintiffs], individually." Record at 130–31 (emphasis supplied).

The Amended Complaint clearly reflects the Freeland Plaintiffs' concerns regarding the value of their minority shares in connection with the merger of Mi–Tech and Birco.

The Freeland Plaintiffs were understandably dissatisfied with Mi–Tech's $14,000 per share offer; they valued their individual shares at $19,018.40. However, they failed to properly challenge Mi–Tech's offer. The Freeland Plaintiffs should have deposited their certificates and demanded payment for their shares according to Mi–Tech's instructions. Afterwards, they could have made written demand for the fair value of their shares.[9] If Mi–Tech then refused to pay according to the written demand, the corporation would have been obligated either to commence a judicial appraisal proceeding in timely fashion or to pay the demanded price per share.[10] The Freeland Plaintiffs declined to pursue their statutory remedies and may not now circumvent the legislature's chosen mechanism for evaluating the value of stock held by dissenting shareholders.[11]

Judicial appraisal was the proper method for resolving the Freeland Plaintiffs' fraud and breach of fiduciary duty claims, including the allegations that Mi–Tech's corporate officers were overcompensated.[12] As noted recently by the Indiana Supreme Court in *Fleming v. International Pizza Supply Corp.*, (1997) Ind., 676 N.E.2d 1051, 1057 n. 9, the calculation of share value may incorporate the value of any claims of wrongdoing brought by either the corporation or its shareholders.[13] The court stated:

---

9. I.C. 23–1–44–18 (Burns Code Ed. Repl.1995) (requiring that such demand must be made within thirty days of the corporation's payment or offered payment for the dissenters' shares).

10. I.C. 23–1–44–19 (Burns Code Ed. Repl.1995) (requiring the corporation to petition the court within sixty days after receiving a shareholder's payment demand).

11. "While ... the appraisal remedy does not provide for the individual liability of majority shareholders or the recovery of punitive damages, ... those are the policy choices made by the legislature in adopting [the IDR's exclusivity provision] and are clearly within the legislature's prerogative." *Fleming, supra*, 676 N.E.2d at 1058.

12. On appeal, the Freeland Plaintiffs claim that Mi–Tech's board of directors failed to pay dividends. While the Amended Complaint fails to mention "dividends," the Freeland Plaintiffs in their Affidavit of May 5, 1997, characterize the "unreasonable compensation" of Ted Z. Leslie, John L. Rainey and Wayne L. Seagren as "preferential dividends." Record at 391. This is consistent with the view of the Freeland Plaintiffs' expert witness, Mr. Joseph S. La Rosa, who asserts in his Affidavit (filed the same day), "the Internal Revenue Service recharacterized wages paid to the aforesaid individual defendants as unreasonable compensation, amounting to preferential dividends." Record at 438–39. According to La Rosa, had these "preferential dividends" been paid out as ordinary dividends, the Freeland Plaintiffs "would have received their fair share of the dividends in a *higher price for the value of their stock.*" Record at 439 (emphasis supplied). Thus, the issue of alleged overcompensation and failure to pay dividends relates directly to the value of the Freeland Plaintiffs' stock at the time of the merger, an issue appropriate for the appraisal process.

13. As noted by the Appellants, *Fleming* was decided in 1997, three years following Mi–Tech's disputed merger. The Freeland Plaintiffs contend, "it would be extremely unfair and prejudicial to apply that case retroactively...." Appellants' Brief at 15. We note that, "[w]ith respect to new rules [of law] announced through adjudication, the rule generally will be applied to all cases pending on direct appeal at the time of the decision." *Sneed v. Associated Group Ins.* (1996) Ind.App., 663 N.E.2d 789, 795 (citing *Preston v. State* (1994) Ind.App., 644 N.E.2d 585, 588); *see also Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.* (1984) Ind.App., 458 N.E.2d 291, 295 ("In general, pronouncements of common law made in rendering judicial opinions of civil cases have retroactive effect unless such pronouncements impair contracts made or vested rights acquired in reliance on an earlier decision."), *trans. denied.*

We find no convincing reason to digress from this general principle. The Indiana Supreme Court in *Fleming* did not address whether its decision should be retroactively applied. However, the court did note that the Indiana Business Corporation Law was adopted in 1986, including its official comments (which the court recognized as "authoritative"). *Fleming, supra*, 676 N.E.2d at 1054–55 n. 5. The court reached its "conclusion with such firmness" in *Fleming* because, in part, the official comments to the IDR's exclusivity language, I.C. 23–1–44–8(c), expressly rejected language from the Revised Model Business Corporation Act stating that dissenters' rights are exclusive unless the challenged corporate action

"If such a claim is not yet resolved at the time the fair value of the dissenters' shares is established, the corporation's claim should be valued like any other asset of the corporation. To the extent judicial intervention is required to accomplish that valuation, the claim could be tried within the judicial appraisal proceeding, if any, or using some other procedure established by the trial court and appropriate in the circumstances." *Fleming, supra* at 1057 n. 9.

The Plaintiff in *Fleming* claimed dissenters' rights upon sale by the sole majority shareholder of substaintially all of the corporation's assets. In addition to claiming fair value for his shares, the Plaintiff alleged that the majority shareholder breached a fiduciary duty to the Plaintiff with regard to the asset sale.[14] The Indiana Supreme Court concluded that the "legislature meant to limit a dissenting shareholder seeking payment for the value of the shareholder's shares to the statutory appraisal procedure" and also "that the legislature did not foreclose the ability of dissenting shareholders to litigate their breach of fiduciary duty or fraud claims with-

in the appraisal proceeding." *Fleming, supra,* 676 N.E.2d at 1057 (emphasis supplied). The Court in part based its decision upon an interpretation of the definition of "fair value," stating that, "the expression 'corporate action to which the dissenter objects' as used in Ind.Code 23–1–44–3 includes not only the merger or asset sale[15] itself but genuine issues of breach of fiduciary duty and fraud affecting the value of the shares at the time of the transaction." *Id.* at 1058.

The court in *Fleming* did acknowledge that, "there probably are limits on this principle [of exclusivity]." *Fleming, supra,* 676 N.E.2d at 1058. However, the opinion did not indicate the extent or nature of such limits. We do not conclude that such limits exclude allegations that directors overcompensated themselves as officers and employees of a corporation or failed to pay dividends. In fact, an appraiser should have been able to calculate the amount of any overpayments and incorporated those amounts into the valuation of the Freeland Plaintiffs' shares.[16] Furthermore, whether

---

was "unlawful or fraudulent." *Fleming, supra* at 1057. An examination of the IDR provisions and the comments thereto should have put the Freeland Plaintiffs upon notice that they risked waiving their claims of fraud and breach of fiduciary duty if they did not raise such claims within the context of a judicial appraisal. Although prejudicial to the Freeland Plaintiffs' claims, applying *Fleming* retroactively to facts in the instant case is not unfair.

14. Plaintiff also brought suit for "breach of fiduciary duties and duties to protect reasonable expectations in the operation of the business ... and for fraud in the operation of the business." *Fleming, supra,* 676 N.E.2d at 1052.

15. The Freeland Plaintiffs contend that *Fleming* does not apply, because the "present case involved a sale of shares of Mi–Tech stock to Mr. Bir[,] not assets...." Appellant's brief at 15. In fact, a corporate merger is at issue. The Freeland Plaintiffs acknowledged this in their Amended Complaint. *See* Record at 130 ("That the Defendants ... as part of a *merger* of Mi–Tech with Birco, Inc .... ") (emphasis supplied). Thus, upon appeal they are estopped from denying that the transaction with Birco was anything but a merger of the two corporations. Because dissenters' rights are triggered by both a merger and an asset sale under I.C. 23–1–44–8(a)(1) & (2) (Burns Code Ed. Repl.1995), we conclude that the Indiana Supreme Court's decision in

*Fleming* applies to both a corporate merger and a sale of assets.

16. Although not discussed in the Appellants' brief, during oral argument upon the Majority Shareholders' and Mi–Tech's motion for summary judgment, counsel for the Freeland Plaintiffs claimed that, at the time of the merger, "the Plaintiffs didn't even know, and it was not made known to them that there were ... contracts of non-competition [and] employment.... So we could not have possibly responded within the sixty days [period in which to tender the Freeland Plaintiffs' stock certificates]." Record at 495–96. If true, this lack of knowledge might conceivably have influenced our decision; however, we find the claim to be baseless. While the Freeland Plaintiffs may or may not have received the actual non-compete and employment agreements in timely fashion, they did know that such agreements existed. In their original Complaint, filed *before* the merger was completed, the Freeland Plaintiffs asserted, "Plaintiffs have also been informally advised that as a part of this transaction of merger, Defendants ... have or will execute separate agreements involving their continued employment with ... Mi–Tech and further obligating them not to compete with the business of Mi–Tech." Record at 10. The Freeland Plaintiffs were free to utilize discovery procedures, within the context of a judicial appraisal, to obtain information about the non-compete and employment agreements. *See* I.C. 23–1–44–19(d) (Burns Code Ed. Repl.1995).

the value of the disputed employment contracts and non-compete agreements should have been reflected in the value of the Freeland Plaintiffs' shares is an issue particularly suited for resolution within a judicial appraisal. We find that, "[w]hat we have then is essentially a complaint over price—the amount and how it was established—for which the statutory appraisal right is a wholly adequate remedy." *Walter J. Schloss Associates v. Chesapeake and Ohio Ry. Co.,* 73 Md.App. 727, 536 A.2d 147, 158 (1988).

The general purpose .of an appraisal statute "is to protect the property rights of dissenting shareholders from actions by majority shareholders which alter the character of their investment." 12B FLETCHER CYCLOPEDIA OF CORPORATIONS § 5906.10 (1993). Moreover, the statutory appraisal process "accords with the policies of corporate majority rule and of ascertaining dissenters' claims on a timely basis." *Fleming, supra,* 676 N.E.2d at 1057. Under the IDR statute, "[t]he court may appoint one (1) or more persons as appraisers to receive evidence and recommend decision on the question of fair value. The appraisers have the powers described in the order appointing them or in any amendment to it." I.C. 23–1–44–19 (Burns Code Ed. Repl.1995). Thus, the trial court is authorized to create a broad or narrow mandate for appraisers, in order to protect the property interests of minority shareholders. This flexibility should allow trial courts to tailor their orders specifically to allow appraisers to consider allegations of fraud and breach of fiduciary duty by corporate directors.

Because it is undisputed that the Freeland Plaintiffs failed to pursue their statutory appraisal rights under the IDR statute and such failure is dispositive of the issue before this court, we conclude that no issues of material fact were presented to the trial court.[17] Therefore, the trial court properly

granted summary judgment in favor of the Majority Shareholders and Mi–Tech.

The judgment is affirmed.

BAKER and KIRSCH, JJ., concur.

---

17. Appellees claim that the Freeland Plaintiffs are estopped from contesting the adequacy or fairness of Mi–Tech's bonus incentive plan, because Ed Freeland voted in favor of the plan and therefore could not have contested the validity of the plan's operation himself. They contend that by inheriting their shares through Ed Freeland's estate, the Freeland Plaintiffs are likewise estopped. Appellees claim, "[a]n estoppel enforceable against a decedent is likewise enforceable against his heirs or devisees." Appellees' Brief at 22 (quoting 12 I.L.E. § 26 (1959 & Supp. 1997)). The Appellees' argument appears meritorious; however, because we decide this matter on other grounds, we decline to address this issue.