## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 24 2017, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

John W. Mervilde
Rick D. Meils
Neil A. Davis
Meils Thompson Dietz & Berish
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
SECURA INSURANCE

Kyle A. Lansberry
Lewis S. Wooton
Michael R. Giordano
Lewis Wagner, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
DAVENPORT MASONRY

Mark D. Gerth
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wilhelm Construction, Inc. and J.C. Ripberger Construction Corporation,

*Appellants/Defendants/Third-Party*

*Plaintiffs,*

v.

Secura Insurance, a Mutual Company and Davenport Masonry, Inc.,

May 24, 2017

Court of Appeals Case No. 49A02-1604-CT-811

Appeal from the Marion Superior Court

The Honorable David J. Dreyer, Judge

Trial Court Cause No. 49D10-1212-CT-46372

*Appellees/Third-Party Defendants.*

**Bradford, Judge.**

# Case Summary

In June of 2012, Mark Rhone was injured while completing certain masonry work in connection to a construction project on the University of Indianapolis's campus. Rhone initially filed suit against the construction project's general contractor. In this suit, Rhone sought damages for the injuries he suffered while working on the construction project. Rhone subsequently amended his complaint to include the construction project's subcontractor which had been responsible for the completion of certain concrete and masonry work. This subcontractor had subsequently entered into a sub-subcontract with Rhone's employer for the completion of certain masonry work.

In filing suit against the general contractor and the subcontractor, Rhone argued that both had breached their nondelegable duty to provide all individuals working on the construction project with a safe work environment. The general contractor and the subcontractor sought indemnification from the

sub-subcontractor, *i.e.*, Rhone's employer, and the sub-subcontractor's insurance carrier. All parties eventually sought summary judgment. The trial court conducted a hearing on the parties' competing summary judgment motions, after which it found that (1) the general contractor and the subcontractor had assumed a nondelegable duty to provide Rhone with a safe work environment; (2) there had been a breach of this duty, resulting in injury to Rhone; and (3) the general contractor and the subcontractor were not entitled to indemnification by the sub-subcontractor or the sub-subcontractor's insurance carrier because the indemnification provision at issue violated Indiana's Anti-Indemnity Statute and, as such, was void.

[3] On appeal, the general contractor and the subcontractor do not dispute the breach of duty, instead arguing that the trial court erred in determining that (1) the indemnification provision at issue was void and (2) they were not entitled to indemnification by the sub-subcontractor or the sub-subcontractor's insurance carrier. Our review of the facts and circumstances of this particular case considered with the relevant statutory authority and case law leads us to the conclusion that the trial court properly found that the indemnification provision at issue violated Indiana's Anti-Indemnity Statute. As such, we affirm the judgment of the trial court.

# Facts and Procedural History

# A. The Project

In September of 2011, the University of Indianapolis hired Appellant/Defendant/Third-Party Plaintiff Wilhelm Construction, Inc. ("Wilhelm") to serve as the construction manager for the construction of Roberts Hall, a dormitory ("the Project"). Wilhelm subcontracted the concrete and masonry work to Appellant/Defendant/Third-Party Plaintiff J.C. Ripberger Construction Corp. ("Ripberger"). Ripberger then subcontracted certain masonry work to Appellee/Third-Party Defendant Davenport Masonry, Inc. ("Davenport"), whose liability carrier is Appellee/Third-Party Defendant Secura Insurance, a Mutual Company ("Secura").

# B. The Relevant Contracts

Four separate contracts govern the parties' relationships: the contract between the University of Indianapolis and Wilhelm ("the Prime Contract"), the subcontract between Wilhelm and Ripberger ("the Wilhelm-Ripberger Contract"), the sub-subcontract between Ripberger and Davenport ("the Ripberger-Davenport Contract"), and the insurance policy issued to Davenport by Secura ("the Secura Policy").

### 1. The Prime Contract

On September 12, 2011, Wilhelm entered into a contract with the University of Indianapolis which provided that Wilhelm would serve as the construction manager for the Project.[1]

### 2. The Wilhelm-Ripberger Contract

After securing the Prime Contract, Wilhelm contracted with Ripberger to complete concrete and masonry work on the Project. The Wilhelm-Ripberger Contract contained the following language with regard to jobsite safety, insurance, and indemnification:

> 9. Subcontractor shall take the proper precautions in the performance of its Work to protect all persons and property from being injured by the Work or by the condition of the site, shall comply with any safety measures initiated by Contractor or set forth in the Subcontract Documents, and shall comply with OSHA and any other applicable Federal, State or local safety laws, rules, orders or regulations.
>
> ****
>
> 14. Prior to the start of its Work, Subcontractor shall procure and maintain in force, for at least the duration of its Work, insurance as is called for by the attached Project Insurance Requirements, plus any additional insurance that is required of Contractor under the Prime Contract. Contractor, Owner, Prime Contractor, Construction Manager and Architect shall be named as additional insured on each of the required policies, except for worker's compensation. Subcontractor shall furnish insurance

---

[1] None of the provisions in the Prime Contract are at issue in the instant appeal. As such, for the sake of brevity and clarity for the reader, none of the specific provisions of this contract are included in this memorandum decision.

certificates to Contractor verifying the required insurance prior to beginning its Work, but no later than ten (10) days from the date of this Subcontract Agreement. If any of the foregoing insurance coverages are required to remain in force after final payment, an additional certificate evidencing continuation of such coverage shall be submitted with Subcontractor's final application for payment. This insurance coverage provided by Subcontractor shall be primary and non-contributory to any other insurance.

**\*\*\*\***

17. To the fullest extent permitted by law, Subcontractor shall indemnify, hold harmless, and defend at its own expenses Contractor, Owner, Prime Contractor, Construction Manager, Architect, and their respective agents, employees and assigns (herein collectively referred to as "Indemnitees") from and against any claims, causes of action, damages, losses and expenses (including litigation costs and attorney's fees) of any nature whatsoever, including but not limited to claims for or relating to injury, sickness or disease to any persons (including death), damages to property (including the lost use thereof and consequential damages therefrom), economic loss, liens or Project delays, which arise out of or are alleged to arise out of a) the performance of Subcontractor's Work; b) the Subcontractor's breach of this Subcontract Agreement; and/or c) any act or omission of Subcontractor, its subcontractors or material supplies, any directly or indirectly employed by them or anyone for whose acts they may be liable; regardless of whether or not such claim, cause of action, damage, loss or expense is contributed to or caused by the negligence, breach of contract or warranty, strict liability, or any other breach of duty to any Indemnitee; provided, however, that subcontractor shall not be obligated to indemnify an Indemnitee for its sole negligence or willful misconduct where such indemnification ins contrary to law, but otherwise it is the intent of the parties that Subcontractor shall indemnify the Indemnitees to the fullest extent permitted by law.

Appellants' App. Vol. IV, p. 103.

[8] The Wilhelm-Ripberger Contract provided that Ripberger would obtain specified minimum levels of insurance for the Project. It also required that "The following shall be named as Additional Insured(s) on Subcontractor's [insurance] policies: F.A. Wilhelm Construction Co., Inc. **AND** Wilhelm Construction, Inc. and their respective affiliates, subsidiaries, officers, directors, employees and representatives **AND** University of Indianapolis." Appellants' App. Vol. IV, p. 105 (bold in original). The Wilhelm-Ripberger Contract further provided that "[t]he insurance coverage provided by Subcontractor under this Subcontract Agreement shall be primary and non-contributory to any other insurance." Appellants' App. Vol. IV, p. 106.

### 3. The Ripberger-Davenport Contract

[9] At some point, Ripberger entered into a contract with Davenport for the completion of certain masonry work on the Project. The Ripberger-Davenport Contract provided that Ripberger had entered into a contract with the University of Indianapolis to provide all concrete and masonry work on the Project, referring to Ripberger's agreement with the University of Indianapolis as the "General Contract."[2] Appellants' App. Vol. IV, p. 107.

---

[2] We note that Ripberger did not actually enter into an agreement with the University of Indianapolis. Rather, Ripberger entered into an agreement with Wilhelm, who had entered into a contract with the University of Indianapolis for completion of the Project. It is unclear from the record before the court on appeal whether Ripberger intended the phrase "General Contract" to refer to the Prime Contract entered into

In relation to insurance and indemnity, the Ripberger-Davenport Contract provided as follows:

> 12. INSURANCE (a) the Subcontractor shall purchase and maintain throughout its performance of this contract the minimum insurance coverages and limits as set forth below,[3] unless otherwise stated in the General Contract. All required insurance shall be procured from insurance companies authorized to do business in the State of Indiana and having A.M. Best Rating of A- (or better) or S&P AA- (or better). Prior to commencing performance under this contract, the Subcontractor shall furnish to Contractor a Certificate or Certificates as issued by the insurer(s) evidencing that the required coverages and limits are in effect and that the policies may not be cancelled or lapse without thirty (30) days prior written notice to the Contractor. J.C. Ripberger Construction Corp. shall be added as an additional insured to the Subcontractor's general liability, auto and umbrella policies, and the coverage's [sic] granted by the additional insured provision of these polices will be primary and on a noncontributory basis. Subcontractor shall furnish Contractor complete and certified copies of all required polices if so requested by Contractor.
>
> ****
>
> 13. INDEMNIFICATION To the fullest extent permitted by law, Subcontractor hereby agrees to indemnify, save and hold harmless, and defend at its own expense Contractor, its officers, employees, agents and servants, the Owner, and the Architect or Engineer, and any other person or entity for whom any of them

---

between Wilhelm and the University or Indianapolis or the Wilhelm-Ripberger Contract entered into between Wilhelm and Ripberger.

[3] The Ripberger-Davenport Contract provides the specific types of insurance which much be provided by Davenport, but does not clearly outline the minimum amount of each type of coverage that is required. The specifics relating to the coverage requirements contained within the Ripberger-Davenport Contract are not material to the resolution of this appeal and, as such, are not quoted herein.

may be legally responsible (herein collectively called "Indemnitees") from and against all claims, loses, damages, suits, costs and expenses, including but not limited to attorneys' fees and costs of litigation, arbitration and mediation or actions of any nature whatsoever, which arise out of or result from, or [are] alleged to arise out of or result from, the work to be performed by the Subcontractor, including without limiting the generality of the foregoing all liability for claims for debt or damage to any property, including the loss of use thereof and consequential damages therefrom, economic loss, damage or injury to any Indemnitee, whether such claim or damage is based upon, or alleged to be based upon statutory, contractual, tort or other liability of any Indemnitee and even though cause, or alleged to be caused by the joint, several and comparative negligence, breach of contract, breach of warranty, strict liability, or other breach of duty by any Indemnitee. It is the intent of this Subcontract that Subcontractor defend, indemnify and hold harmless Indemnitees and any such other persons or entities as the contract documents may require even if it is alleged that Indemnitees, or such other persons or entities, individually or collectively contributed to the alleged wrongdoing, were individually or collectively, actively or passively negligent or individually or collectively liable because of a non-delegable duty. Subcontractor is not obligated to defend, indemnify or hold harmless Indemnitees, or such other persons, for their sole negligence or willful misconduct if such indemnification is contrary to law.

Also, the Subcontractor shall defend, indemnify, and hold the Owner and its officers, agents, and employees harmless from all claims, demands, and causes of action brought against them or any of them as a result of Subcontractor's non-compliance with any non-discrimination requirements imposed by Indiana Code §§ 22-9-1-10, 36-1-12-15, and 5-16-6-1 (or any successor or claimed statutory obligations).

If any part of this provision is adjudged to be contrary to law, the

remaining part of the provision shall in all other respects be and remain legally effective and binding. Moreover, this provision shall not be construed to eliminate or in any way reduce any other indemnifications or rights which the Contractor, Construction Manager, Owner, Architect or Engineer has by law.

Appellants' App. Vol. IV, pp. 110-11.

### 4. The Secura Policy

[11] Relevant portions of the Secura Policy provide as follows:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.…

b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no Insured … and no "employee" authorized by [the Insured] to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.…

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any Insured … or any "employee" authorized by [the Insured] to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**\*\*\*\***

## 2. Exclusions

This insurances does not apply to:

**\*\*\*\***

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the Insured arising out of and in the course of:
  (a) Employment by the Insured; or
  (b) Performing duties related to the conduct of the Insured's business; or

(2)  The Spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1)  Whether the Insured may be liable as an employer or in any other capacity; and
(2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability as assumed by the Insured under an "Insured contract".

****

## SECTION II – WHO IS AN INSURED

1.  If you are designated in the Declarations as:
****
d.  An organization other than a partnership, joint venture or limited liability company, you are an Insured.  Your "executive officers" and directors are Insureds, but only with respect to their duties as your officers or directors.  Your stock-holders are also Insureds, but only with respect to their liability as stockholders.
****
2.  Each of the following is also an Insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" … but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are Insureds for:
(1)  "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members … to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

**\*\*\*\***

## SECTION IV – COMMERCIAL GENERAL LIABLITY CONDITIONS

**\*\*\*\***

### 2. Duties in the event of Occurrence, Offense, Claim or Suit

a. You must see to it that [the Insurer is] notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any Insured, you must:

(1)  Immediately record the specifics of the claim or
"suit" and the date received; and
(2)  Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or
"suit" as soon as practicable.

c.  You and any other involved Insured must:
(1)  Immediately send us copies of any demands,
notices, summonses or legal papers received in
connection with the claim or "suit";
(2)  Authorize us to obtain records and other
information;
(3)  Cooperate with us in the investigation or
settlement of the claim or defense against the "suit";
and
(4)  Assist us, upon our request, in the enforcement of
any right against any person or organization which
may be liable to the Insured because of injury or
damage to which this insurance may also apply.

d.  No Insured will, except at that Insured's own cost, voluntarily
make a payment, assume any obligation, or incur any expense,
other than for first aid, without our consent.

**3.  Legal Action Against Us**

No person or organization has a right under this Coverage Part:
a.  To join us as a party or otherwise bring us into a
"suit" asking for damages from an Insured; or
b.  To sue us on this Coverage Part unless all of its
terms have been fully complied with.

Appellants' App. Vol. VII, pp. 20-21, 28-30 (bold in original).

[12]    The Secura Policy defines the term "bodily injury" as follows: "Bodily injury"

means bodily injury, sickness or disease sustained by a person, including death

resulting from any of these at any time."  Appellants' App. Vol. VII, p. 32.  It

defines the term "occurrence" as follows: "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellants' App. Vol. VII, p. 33. The Secura Policy further defines the term "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
> a. An arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with [the Insurer's] consent; or
> b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

Appellants' App. Vol. VII, p. 34.

[13] The "Additional Insured WRAP", an endorsement incorporated into the Secura Policy, provides as follows:

> **A. Additional Insured When Required By Written Construction Contract**
>
> **1. Operations Performed for An Additional Insured**
>
> WHO IS AN INSURED is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in a written contract or written agreement prior to a loss, that such person or organization be added as an additional Insured on your policy. Such person or organization is an additional Insured only with respect to liability for "bodily

injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> a. Your acts or omissions or
>
> b. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional Insured.

A person's or organization's status as an additional Insured under this provision ends at the earlier of when your operations for that additional Insured are completed; or the end of the policy period.

**\*\*\*\***

**F. Additional Condition**

The following condition is added:

**Additional Insured Duty to Notify**

The additional Insured described in A … must give written notice of loss, including a demand for defense and indemnity, to any other insurer having coverage for the loss under its policies. Such notice must demand full coverage available and the additional Insured shall not waive or limit such other available coverage.

This additional condition does not apply to the insurance available to the additional Insured which covers that person or organization as a named insured.

Appellants' App. Vol. VII, pp. 67-69 (bold in original).

## C. The Incident

On June 5, 2012, Mark Rhone, an employee of Davenport, and Davenport foreman Gary Smalley were disassembling scaffolding. Smalley was operating a piece of equipment known as a lull, which was used to lift the scaffolding. While Rhone was standing next to a section of the scaffolding, Smalley lifted the section of the scaffolding up with the lull. The section of the scaffolding toppled over onto Rhone.[4] Rhone was injured when he was crushed by a section of the scaffolding.

## D. Procedural History Leading to this Appeal

On December 4, 2012, Rhone and his wife (collectively, "the Rhones") filed the underlying lawsuit against Wilhelm, seeking damages for the injuries Rhone allegedly suffered as a result of the incident. After being sued, Wilhelm requested defense and indemnity from Ripberger based on the indemnity provisions of the Wilhelm-Ripberger Contract. On July 30, 2013, Ripberger's insurer, Amerisure, sent a letter to Davenport and Secura demanding that they defend and indemnify Ripberger and Wilhelm. Secura denied Americure's demand, noting that Wilhelm is not insured under the Secura policy and that no lawsuit had been filed against Ripberger.[5]

---

[4] At all times relevant to this appeal, Rhone alleged that Smalley's negligent operation of the lull caused the scaffolding to topple over onto him.

[5] On August 2, 2013, Secura filed a Motion to Intervene in the underlying suit so to protect its worker's compensation lien. The trial court granted this motion on August 13, 2013.

[16]     Wilhelm sought leave to file a third-party complaint against Secura and Davenport on December 19, 2013. The trial court subsequently granted this motion. Secura filed its answer to this third-party complaint on March 17, 2014.

[17]     On May 1, 2014, the Rhones amended their complaint, adding Ripberger as a defendant. In this amended complaint, the Rhones alleged that the Appellants were liable for breaching the nondelegable duty of care that they assumed by contract. Counsel for Secura was not served with this amended complaint. Six months later, Wilhelm and Ripberger filed a third-party complaint against Secura. Ripberger did not request that Secura defend or indemnify it for the suit at any time between May 1, 2014 and November 14, 2014, when it sued Secura for an alleged breach of contract.

[18]     Between April and August of 2015, each party filed a motion for summary judgment. The Rhones sought partial summary judgment on the issues of whether Appellants (1) owed a nondelegable duty of job site safety and (2) were vicariously liable for their subcontractors. Wilhelm and Ripberger (collectively, "Appellants") moved for summary judgment against Davenport and Secura (collectively, "Appellees"), arguing that Secura was obligated to defend and indemnify Appellants or, alternatively, that Davenport had breached its obligation to provide insurance that would provide for Appellants' defense and indemnification. Appellees opposed Appellants' motions and filed cross-motions for summary judgment. The trial court held a hearing on all of the summary judgment motions on December 3, 2015.

[19] On January 12, 2016, the trial court issued an order granting the Rhones' motion for partial summary judgment, finding that "as a matter of law" Appellants "assumed a contractual nondelegable duty for the safety of all employees on the subject construction project, including the employees of [their] subcontractors." Appellants' App. Vol. 8, p. 54. The trial court also found that "in addition to liability for their own negligence, [Appellants] are vicariously liable for the negligence of their subcontractors including DAVENPORT." Appellants' App. Vol. 8, p. 54. Appellants do not challenge these findings on appeal.

[20] Also on January 12, 2016, the trial court issued an order denying Appellants' motion for summary judgment and granting Secura's motion for summary judgment. On March 30, 2016, the trial court amended its order to also grant Davenport's motion for summary judgment. This appeal follows.

# Discussion and Decision

[21] On appeal, the Appellants contend that the trial court erred in granting the Appellees' motion for summary judgment. In making this contention, the Appellants argue that the trial court erred in finding that, as a matter of law, they were not entitled to indemnification by Secura. The Appellants further contend that the trial court erred in denying their motion for summary judgment. We disagree with both contentions.

# I. Standard of Review

Summary judgment is appropriate only where no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Settles v. Leslie*, 701 N.E.2d 849, 852 (Ind. Ct. App. 1998). Genuine issues of material fact exist where facts concerning an issue which would dispose of the litigation are in dispute. *Settles*, 701 N.E.2d at 852. The moving party has the initial burden of demonstrating, prima facie, the absence of genuine issues of material fact. *Id*. If the moving party does so, the burden then falls upon the non-moving party to identify a factual dispute which would preclude summary judgment. *Id*. Upon appeal of a grant of summary judgment, we apply the same standard as the trial court, resolving any factual disputes or conflicting inferences in favor of the non-moving party. *Id*. We consider only those portions of the record specifically designated to the trial court. *Id*. Upon appeal, the non-moving party bears the burden of persuasion and must specifically point to the disputed material facts and the designated evidence pertaining thereto. *Id*. We will liberally construe the designated evidence in favor of the non-movant, so that he is not improperly denied his day in court. *Id*.

*Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 926-27 (Ind. Ct. App. 2003).

# II. Analysis

## A. Appellants' Nondelegable Duties

The Indiana Supreme Court recently handed down an opinion in which the Court discussed the duties that contractors owe to subcontractors in cases stemming from accidents occurring on construction sites. *See Ryan v. TCI Architects/Engineers/Contractors, Inc. et al*, --- N.E.3d ---, 2017 WL 1488853 (Ind. April 26, 2017), the Indiana Supreme Court explained as follows:

As to the duty owed by a general contractor, the long-standing rule in Indiana is that "a principal will not be held liable for the negligence of an independent contractor." *Bagley v. Insight Commc'ns Co., L.P.*, 658 N.E.2d 584, 586 (Ind. 1995) (citing *Prest-O-Lite Co. v. Skeel*, 182 Ind. 593, 597, 106 N.E. 365, 367 (1914); also citing *City of Logansport v. Dick*, 70 Ind. 65, 78 (1880)). Therefore, a general contractor, such as TCI, will ordinarily owe no outright duty of care to a subcontractor's employees, much less so to employees of a sub-subcontractor. This means that when a subcontractor fails to provide a reasonably safe workspace, the general contractor will not incur liability for employee injury, even when such injury is proximately caused by the subcontractor negligence. The rationale behind this rule is that a general contractor has little to no control over the means and manner a subcontractor employs to complete the work. *Stumpf v. Hagerman Const. Corp.*, 863 N.E.2d 871, 876 (Ind. Ct. App. 2007).

However, five exceptions to our general rule exist. One such exception allows for the existence of a duty of care where a contractual obligation imposes a "specific duty" on the general contractor.[6] *Bagley*, 658 N.E.2d at 586. "If a contract affirmatively evinces an intent to assume a duty of care, actionable negligence may be predicated on the contractual duty." *Stumpf*, 863 N.E.2d at 876. In other words, a contract that is found to demonstrate the general contractor's intent to assume a duty of care exposes the general contractor to potential liability for a negligence claim where no such liability would have otherwise existed. A duty imposed by contract, once formed, is non-delegable and is thought to encourage the general

---

[6] The other exceptions recognized by Indiana law apply when: (1) the contract requires the performance of intrinsically dangerous work; (2) the act will create a nuisance; (3) the act to be performed will probably cause injury to others unless due precaution is taken; and (4) the act to be performed is illegal. *Bagley*, 658 N.E.2d at 586.

contractor to minimize the risk of resulting injuries. *Bagley*, 658
N.E.2d at 588.

*Ryan*, --- N.E.3d ----, 2017 WL 1488853 *3 (footnote in original).

In the instant matter, the trial court found that, as a matter of law, Appellants had each assumed a nondelegable duty for the safety of all employees working on the Project, including the employees of their subcontractors. The trial court further found that given this nondelegable duty, in addition to liability for their own negligence, Appellants were vicariously liable for the negligence of their subcontractors, including Davenport. Appellants do not challenge the trial court's findings that they (1) had assumed a nondelegable duty for the safety of all employees working on the Project or (2) were vicariously liability for the negligence of their subcontractors.

## B. Indiana's Anti-Indemnity Statute

Appellants, who assumed a non-delegable duty for the safety of their worksite, seek indemnification from Davenport for damages suffered by Rhone after he was injured when scaffolding fell on him as he was working on Appellants' worksite. As such, the question presented on appeal is not of duty, but rather of indemnification.

Again, the Ripberger-Davenport contract included a section titled "Indemnification." As is stated above, the Ripberger-Davenport Contract expressly provides that the indemnification provision contained therein applies "even if it is alleged that Indemnitees … were individually or collectively,

actively or passively negligent or individually or collectively liable *because of a non-delegable duty*." Appellants' App. Vol. IV, p. 111 (emphasis added). The trial court found that this provision was void because it violated Indiana's Anti-Indemnity Statute.

[27]    Appellants challenge the trial court's determination that the "Indemnification" section of the Ripberger-Davenport Contract violates Indiana's Anti-Indemnity Statute and is therefore void. Indiana's Anti-Indemnity Statute, which is codified at Indiana Code section 26-2-5-1, provides as follows:

> All provisions, clauses, covenants, or agreements contained in,
> collateral to, or affecting any construction or design contract
> except those pertaining to highway contracts, which purport to
> indemnify the promisee against liability for:
>> (1) death or bodily injury to persons;
>> (2) injury to property;
>> (3) design defects; or
>> (4) any other loss, damage or expense arising under
>> either (1), (2) or (3);
> from the sole negligence or willful misconduct of the promisee or
> the promisee's agents, servants or independent contractors who
> are directly responsible to the promisee, are against public policy
> and are void and unenforceable.

Ind. Code § 26-2-5-1.[7]

---

[7] The vast majority of states have adopted some form of a general anti-indemnity statute relating to construction contracts. *See* Alaska Stat. § 45.45.900; Ariz. Rev. Stat. Ann. § 34-226; Cal. Civ. Code §§ 2782, 2782.05; Colo. Rev. Stat. § 13-50.5-102; Conn. Gen. Stat. § 52-572K; Del. Code Ann. tit. 6, § 2704; Fla. Stat. § 725.06; Ga. Code Ann. § 13-8-2; Haw. Rev. Stat. § 431:10-222; Idaho Code § 29-114; 740 Ill. Comp. Stat. 35/1; Md. Code Ann., Cts. & Jud. Proc. § 5-401; Mass. Gen. Laws ch. 149, § 29C; Mich. Comp. Laws

[28]     We have previously explained that the purpose of the Anti-Indemnity Statute is to increase safety at construction sites. *See generally Fort Wayne Cablevision v. Ind. & Mich. Electric Co.*, 443 N.E.2d 863, 869-71 (Ind. Ct. App. 1983) (discussing the purpose and scope of the Anti-Indemnity Statute). The Seventh Circuit further expanded the rationale for the Anti-Indemnity Statute, stating the following:

> Before it was passed general contractors would negotiate with their subcontractors for a promise to indemnify the general contractor if he was sued for a personal injury to a worker employed by a subcontractor at the construction site. The legislature believed that this type of agreement resulted in more accidents on the job. This is possible, certainly. If the general contractor can shift the financial burden of liability he may have less incentive to take measures to make the construction site safe. Of course he will have to compensate the subcontractors for imposing a greater risk of liability on them, and thus will pay a price for his carelessness. But in just the same way, a person who becomes more careless because he has liability insurance may in the end have to pay for his greater carelessness in the form of a higher premium for insurance, yet the buffering of liability by the insurance company may result in some additional carelessness. This would not matter if tort compensation were always full compensation. For then the victims of this extra carelessness would be no worse off, while the insured and insurer (or

§691.991; Minn. Stat. §337.02; Miss. Code Ann. §31-5-41; Mo. Rev. Stat. §434.100; Mont. Code Ann. §28-2-2111; Neb. Rev. Stat. §25-21, 187; N.J. Stat. Ann. § 2A:40A-1; N.M. Stat. Ann. § 56-7-1; N.Y. Gen. Oblig. § 5-322.1; N.C. Gen. Stat. § 22B-1; Ohio Rev. Code Ann. 2305.31; Or. Rev. Stat. § 30.140; R.I. Gen. Laws § 6-344; S.C. Code Ann. §32-2-10; S.D. Codified Laws §56-3-18; Tenn. Code Ann. § 62-6-123; Utah Code Ann. § 13-8-1; Va. Code Ann. § 11-4.1; Wash. Rev. Code § 4.24.115; W. Va. Code § 55-8-14; Wis. Stat. § 895.447. In addition, Louisiana, North Dakota, and Texas have adopted statutes limiting indemnity in certain specific situations. *See* La. Stat. Ann. § 38:2216(G); N.D. Cent. Code § 9-08-02.1; Tex. Civ. Prac. & Rem. § 130.002. For instance, North Dakota and Texas limit indemnity when an injury was caused by defects in planning or design. *See* N.D. Cent. Code § 9-08-02.1; Tex. Civ. Prac. & Rem. § 130.002.

indemnitee and indemnitor—in fact liability insurance is just a special form of indemnity) would be better off; otherwise they would not have made the contract. See Shavell, *On Liability and Insurance*, 13 Bell J. Econ. 120 (1982). But tort compensation is not always full compensation, and when it is not the victims may be worse off.

*McMunn v. Hertz Equip. Rental Corp.*, 791 F.2d 88, 92 (7th Cir. 1986). The Seventh Circuit further noted that "in sum, it is possible to understand how the Indiana legislature might have believed that banning indemnity agreements might make construction workers safer" and "[t]he statute is directed at a particular problem, construction safety[.]" *Id*. at 93.

[29] The trial court noted below that Secura only had an obligation under the Secura Contract to indemnify Appellants if the indemnity provision in the Ripberger-Davenport Contract was enforceable. However, the trial court determined that the indemnity provision in the Ripberger-Davenport Contract was void and unenforceable under Indiana's Anti-Indemnity Statute. In making this determination, the trial court noted that both Wilhelm and Ripberger are directly responsible for Davenport and, in effect, are "asking to be indemnified for their sole fault and the fault of 'independent contractors who are directly responsible to [them]." Appellant's App. Vol. II, p. 20 (brackets in original). The trial court further stated that:

> If this Court allowed Wilhelm and Ripberger to recover indemnification from Davenport in this case, Wilhelm's and Ripberger's non-delegable duty would be transformed into a delegable duty and, as an inevitable consequence, the purpose of

the Anti-Indemnity State would be thwarted because Wilhelm and Ripberger would have absolutely no incentive to make their construction sites safe. This result is unacceptable. Therefore, the indemnity provision in the Ripberger/Davenport contract is void and unenforceable as a matter of law.

Appellants' App. Vol. II, p. 20.

[30] In arguing that the trial court erred in finding that the indemnification clause in the Ripberger-Davenport Contract was rendered void by Indiana's Anti-Indemnity Statute, Appellants cite to this court's prior opinion in *Moore Heating & Plumbing, Inc. v. Huber, Hunt & Nichols*, 583 N.E.2d 142 (Ind. Ct. App. 1991).[8] In *Moore*, the general contractor, Huber, sought indemnification from Moore after Dirk Peterson,[9] an employee of Moore, was injured on Huber's construction worksite. 583 N.E.2d at 144. The trial court granted summary judgment in favor of Huber. *Id*. On appeal, this court affirmed, stating the following:

> We agree that the legislature has declared one form of construction contract indemnity clause, in which the promisee seeks indemnification for its own negligence, to be void and unenforceable. That form is the indemnity clause which seeks to indemnify the promisee against liability from its *sole* negligence,

[8] Appellants also cite to a number of other cases. However, we only discuss *Moore* because either the resolution of the other cases rely completely on *Moore's* reasoning or are not applicable to the question of whether Indiana's Anti-Indemnity Statute apply to the facts of the instant matter.

[9] Peterson was injured when a scissor lift, upon which he was working, "tipped and fell" while being operated by another worker. *Moore*, 583 N.E.2d at 144.

that is, in a situation where the promisee and no one else has been negligent.

*Id*. at 148. Because Peterson's injury did not result solely from Huber's negligence, this court determined that the indemnity statute in question was not rendered void by Indiana's Anti-Indemnity Statute.[10] *Id*. Importantly, however, unlike the instant matter, nothing in the court's opinion in *Moore* indicates that Huber, the general contractor, had assumed a non-delegable duty for the safety of all employees working on the construction project.

[31]    While we acknowledge this court's prior conclusion in *Moore*, we must note that the court's conclusion in *Moore* seems to have a more narrowing effect on Indiana's Anti-Indemnity Statute than what we believe was intended by the General Assembly. A plain reading of the Anti-Indemnity Statute reveals that immediately following the language which would seem to limit application of the statute to the sole negligence of the promisee, the General Assembly inserted the much broader, arguably nearly all-encompassing, language which extends application of the statute to not only the sole negligence of the promisee, but also the sole negligence of promisee's agents, servants, and independent contractors who are directly responsible to the promisee. *See* Ind.

---

[10] We must note that the court's conclusion in *Moore* seems to have a more narrowing effect on the statute than what we believe was intended by the General Assembly. We base this opinion on the fact that immediately after inserting the language which would seem to limit application of the statute to the sole negligence of the promisee, the General Assembly inserted the much broader, arguably nearly all-encompassing, language which extends application of the statute to not only the sole negligence of not only the promisee, but also the sole negligence of promisee's agents, servants, or independent contractors who are directly responsible to the promisee.

Code § 26-2-5-1. Therefore, we believe that the question of "sole negligence" is not merely limited to Appellants, but also includes the "sole negligence" of any independent contractors who are directly responsible to Appellants. Like the trial court, we conclude that Davenport falls into this category.

[32] As a subcontractor working on the Project, Davenport and its employees were directly responsible to the Appellants, who had assumed a non-delegable duty to ensure the safety of all of the individuals working on the Project. Given the fact that Davenport was directly responsible to Appellants coupled with Appellants' assumption of the non-delegable duty and the trial court's unchallenged finding that Appellants are vicariously liable for the negligence of their subcontractors, including Davenport, we conclude that it is as if any negligence committed by Appellants' subcontractors qualifies as the negligence of Appellants. As such, one can reasonably find that Rhone's injuries were caused by negligence attributable solely to Appellants. To conclude otherwise would, in effect, allow Appellants to dodge their duty to provide a safe worksite for all employees working on the Project. We further conclude that under the specific undisputed facts and circumstances of this case, the indemnification provision at issue is rendered void by Indiana's Anti-Indemnity Statute.

# Conclusion

[33] Because we conclude that the indemnity provision contained in the Ripberger-Davenport Contract is rendered void by Indiana's Anti-Indemnity Statute, we affirm the judgment of the trial court. Further, because we affirm the trial court

on the question of application of Indiana's Anti-Indemnity Statute, we need not consider the parties' additional arguments for and against the trial court's award of summary judgment to Secura and Davenport.

[34] The judgment of the trial court is affirmed.

Najam, J., and Bailey, J., concur.